## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS, PEORIA DIVISION

| | | |
|---|---|---|
| ORTHOFIX, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 13-cv-1463 |
| | ) | |
| MELISSA GORDON, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AND OPINION

THOMAS P. SCHANZLE-HASKINS, U.S. MAGISTRATE JUDGE:

Before the Court is Defendant's Motion to Compel Discovery Cooperation and Memorandum in Support (d/e 28) (Motion to Compel Discovery) and Plaintiff's Response (d/e 33),  Defendant's Motion to Compel Production of Documents in Response to Second Request and Memorandum in Support (d/e 34) (Motion to Compel Production) and Plaintiff's Response (d/e 41).

Background

Plaintiff Orthofix, Inc. (Orthofix) and Defendant Melissa Gordon (Gordon), on September 1, 2007, entered into a Sales Agreement under which Gordon was to sell Orthofix products to physicians and other customers.  Gordon marketed and sold a variety of products during her time with Orthofix, including, but not

limited to, bone growth stimulators.  Gordon was employed by Orthofix from September 1, 2007 to March 8, 2013 (Orthofix First Amended Complaint, paragraphs 35-36).

Orthofix' First Amended Complaint asserts claims against Gordon for breach of the employment contract between Orthofix and Gordon by breaching the customer non-solicitation provisions of the contract (Count I), breaching the unfair competition provisions of the contract (Count II), breaching the provisions of the contract promising not to disclose confidential information (Count III), misappropriating Orthofix' trade secrets (Count IV), and tortiously interfering with actual and prospective business relations (Count V).  Orthofix has filed similar litigation against two other former sales people, Orthofix Inc. v. Hunter, No. 3:13-cv-00828, (N.D. Ohio) (Hunter), and Orthofix Inc. v. Lemanski, No. 2:13-cv-11421 (E.D. Mich.) (Lemanski).[1]

The bench trial in Hunter proceeded before Judge Jack Zouhary on July 15, 2014.  Closing arguments by counsel were presented to Judge Zouhary on August 21, 2014.  Judge Zouhary has not ruled in the Hunter litigation.

On May 9, 2014, Gordon's counsel filed a Motion to Compel Discovery (d/e 28).  On May 27, 2014, the parties filed a joint motion to extend the fact

---

[1]The same counsel represents the defendant in the Hunter litigation, the Lemanski litigation, and this litigation.

discovery deadline and to extend the deadline in paragraph five of the Scheduling Order so that the parties need not file discovery motions in advance of their mediation set in Chicago on June 16, 2014 (d/e 29). The Court granted the motion. The mediation was unsuccessful. The Motion to Compel Discovery (d/e 28) was fully briefed by the parties on July 30, 2014. On July 1, 2014, the Defendant filed her Motion to Compel Production (d/e 34). Orthofix filed its Response (d/e 41) on August 1, 2014.

Both Motions are awaiting decision by the Court.

### A. Defendant's Motion to Compel Discovery (d/e 28)

Orthofix filed a Response to the Motion to Compel Discovery (d/e 33). In its Response, Orthofix' counsel notes that Orthofix has told Gordon on numerous occasions it will follow the guidance from two other Federal Judges who have already addressed some of the issues raised in the Motion to Compel Discovery. Attached to the Response is the April 29, 2014, Order of Judge Zouhary regarding discovery disputes in the Hunter litigation.

Gordon filed a Reply to Orthofix' Response (d/e 40). In that Reply, Gordon noted, on the eve of trial in Hunter, Orthofix disclosed that sales reports previously provided to Hunter in support of Orthofix' expert's damage calculations had caused duplicate sales to be reported more than doubling the damage figures claimed. A Motion for Sanctions was filed in Hunter concerning

the amendment of the plaintiff's damage calculations (docket no. 88, Hunter).  In

that motion, counsel for Hunter noted that on April 14, 2014, Orthofix served its

expert report alleging damages of $3,845,874.  The motion also indicates, less

than two weeks before trial, Orthofix served an amended expert report that

offered an alternative damage analysis of $705,668.  The motion for sanctions

also noted that on July 14, 2014, four business days before trial, Orthofix'

counsel reported as follows:

> Sales reports prepared by the Orthofix finance department which
> were the basis for Orthofix's expert's damage calculations overstated
> sales in the relevant period by approximately double.  This
> overstatement was the result of an IT error in generating the report
> from Orthofix's database, which caused duplicate sales to be
> reported.  As a result of this bad data unrecognized by Orthofix, its
> counsel, or its expert, Orthofix's expert's report overstated Orthofix's
> damages.

Counsel for Hunter also noted that Orthofix, after the disclosure set forth above,

produced another expert report from their damage expert claiming damages of

$1,623,877.

A review of the minutes of proceedings from the Hunter litigation indicates

that on July 15, 2014, Judge Zouhary granted defendant's motion for sanctions in

part.  The minutes of proceedings for July 15, 2014, indicate that details of the

ruling are contained in the transcript.  To date, no transcripts have been filed in

Hunter, and the Court, on September 3, 2014, entered a marginal entry order

granting the motion for leave to file trial transcripts under seal subject to disclosure following the filing of final judgment.

Even though the Courts considering the Hunter and Lemanski litigation may have ruled on various discovery issues, a decision in another case is not binding on this Court unless principles of *res judicata* or collateral estoppel apply. RLJCS Enterprises, Inc. v. Professional Ben. Trust Multiple Employer Welfare Ben. Plan and Trust, 487 F.3d 494, 499 (7th Cir. 2007); Colby v. J.C. Penney Co., Inc., 811 F.2d 1119, 1123-24 (7th Cir. 1987); Schultz v. Aviall, Inc. Long Term Disability Plan, 790 F.Supp.2d 697, 706 (N.D. Ill. 2011).  The RLJCS Enterprises opinion goes so far as to say that District Court decisions have no authoritative effect.  487 F.3d at 499.   Orthofix has made no argument that the rulings of the Courts in the Hunter and Lemanski litigations are binding on this Court based on principles of *res judicata* or collateral estoppel, and while these rulings may be instructive, Gordon, and the Court, are not bound by these rulings.

The problems with the damage calculations in the Hunter litigation, as set forth above, may certainly be considered by the Court in ruling on the discovery motions now pending in this litigation.

The Motion to Compel Discovery requests that Orthofix provide documents which Gordon believes are necessary for her damage analysis.  Gordon argues that Orthofix cannot simply point to a sales decrease in Gordon's former territory

and claim *ipso facto* that Gordon must have done something wrong. Gordon argues that if Orthofix' sales to her former customers declined, it is likely because other factors influenced the sales figures. Among those factors are publicity regarding government investigations and lawsuits involving Orthofix, decline in sale of bone growth stimulators due to insurers denying approval for reimbursement, and decline in sales revenue due to a new salesperson in Gordon's old territory. Gordon also argues that recent restatements of lower revenues for 2011 and 2012 suggest that a decrease in revenue after 2012 was the result of Orthofix now properly recognizing revenues.

Orthofix responds that it is not required to produce "broad swaths of data" not relied upon by Orthofix in its own damage calculations and not maintained by Orthofix in the normal course of business. Orthofix asserts that the burden of proving damages belongs to Orthofix. It argues that the burden is not upon Gordon or her expert to make an independent assessment of damages from raw data.

The Federal Rules of Civil Procedure grant the Court broad latitude regarding the type of information which may be discoverable. According to Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense". Discovery requests are relevant if there is a possibility that the

information sought may be relevant to the subject matter of the action.  Clark v. Ruck, No. 13 CV 3747, 2014 WL 1477925, at *2 (N.D.Ill. April 15, 2014) (citations omitted).  Information sought "need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Fed.R.Civ.P. 26(b)(1).  Courts are instructed to consider "the totality of the circumstances, weighing the value of the material sought against the burden of providing it" and taking into account society's interest in furthering "the truth-seeking function" in each particular case.  Patterson v. Avery Dennison Corp., 281 F.3d 676, 681 (7th Cir. 2002) (citation omitted).

Litigants are entitled to pursue discovery on defenses which show an alternative to evidence presented by the opposing party.  Shelvy v. Wal-Mart Stores, 2014 WL 3882487 (N.D.Ill. August 7, 2014).  In Shelvy, the court allowed the discovery of a personal injury plaintiff's employment records because they might contain information regarding injuries received in a prior accident which might be relevant to the physical and mental condition of the plaintiff.  The court reasoned that information about the pre-existing injuries was relevant to causation and damages and might be a possible alternative cause for the injuries which the plaintiff claimed caused her damages.  The Defendant herein seeks information to try to prove that there are alternative causes for the damages claimed by Plaintiff.

In the Defendant's Motion to Compel Discovery, the Defendant first seeks an order requiring production of documents sought under Gordon's first request for production of documents in paragraphs 39-43 and 45-51.

1)     Requests for Per Unit Detail of Sales by Customer

(Defendant requests 39-43)

In requests 39-43, Gordon requests per unit sales information on a monthly basis.  More specifically, Gordon requests information for sale of bone growth stimulators to each of Gordon's former customers for the following sales information: number of units sold, price per unit, revenue per unit, profit per unit, and cost per unit.  Gordon alleges that the only information Orthofix provided at the customer level is a spreadsheet showing monthly revenue by customer and other documents showing average price per unit and average profit margin for company-wide sale of bone growth stimulators.  Orthofix suggests that Gordon use the "average price" and "average profits" for her estimate of actual sales. Gordon contends that this method is unacceptable because the sale for each bone growth stimulator can vary widely from customer to customer.

In Motion to Compel (d/e 28, pg 4), Gordon indicates the per unit sales data is necessary in order to accurately determine damages in order to challenge Plaintiff's theory of computing damages, which is based upon average revenues, rather than actual data regarding revenues.

The Plaintiff argues that the exact argument was rejected in the Hunter case where Judge Zouhary definitively denied identical requests and held "Orthofix need not create custom reports with information that Hunter seeks". Judge Zouhary's Order, attached as Exhibit A, to Plaintiff's response was entered on April 29, 2014.  In the Order, Judge Zouhary indicated the plaintiff had no need to create "custom reports" (quotations in original order).  Judge Zouhary's opinion contains no indication of what is meant by "custom reports" (Response, Exhibit A, d/e 33-1).

In the Response in this case, Plaintiff argues that "the documents Gordon seeks do not exist - their production would require Orthofix to undertake an extremely time-consuming and burdensome process to manually compile custom reports" (d/e 33, page 5).

Defendant's request for detailed factual information regarding sales was presented again in the Lemanski litigation.  Oral arguments were heard on the defendant's motion to compel before the Hon. R. Steven Whalen, Executive Magistrate Judge, Eastern District of Michigan.  The Court has reviewed the 41-page transcript of argument and rulings by Judge Whalen on Lemanski's motion to compel (Lemanski d/e 50, filed June 5, 2014).  Defendant Lemanski, in argument, indicates that the record before Judge Zouhary was undeveloped. Counsel for Lemanski told Judge Whalen that the defendant didn't want "custom

reports", but wants "to know who was paid commissions on the sales to Mr. Lemanski's customers and in what amounts so that our expert can say, I'm not applying a 23.1 average commission rate, I want to look at what commission was actually paid on these lost sales so that I can do a more full sum damages analysis." (Lemanski document #50, pages 11-12).

Counsel for Orthofix, in responding to the argument made before Judge Whalen, indicated that Orthofix did not keep profit on a transaction by transaction basis in the ordinary course of business. Orthofix' counsel indicated that creating that profit analysis would be a "custom report". Counsel for Orthofix stated that "the underlying data is likely there". Counsel for Orthofix further noted that what would be necessary to get the profit information on a transaction by transaction basis would be "to turn over the details of every sale Orthofix has made over a five-year period or, for Orthofix to go back and create this custom report that shows that information". (Lemanski d/e 50, pages 25, 26).

Hence, there appears to be an alternative to creating a "custom report". The alternative would be to turn over the underlying data to the Defendant who could make an analysis of the underlying data to challenge the "average" profit figures compiled by Orthofix. Counsel for Orthofix has not described in this litigation the nature of the underlying data available which would provide the details of the sales of products at issue in this litigation for a five-year period.

There is no clear indication whether that information is electronically stored information (ESI) or hard copies of documents.  Without this detail, the Court cannot rule on the request for the detailed sales information.  With regard to ESI, Federal Rule of Civil Procedure 26(b)(2)(B) provides as follows:

> A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or costs.  If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C).  The court may specify conditions for the discovery.

Additionally, Rule 26(b)(2)(C) gives the Court, on motion or on its own, the power to review discovery sought in order to determine whether the burden or expense of the proposed discovery outweighs its likely benefit considering the needs of the case, the amount in controversy, the parties resources, and the importance of the issues at stake in the action, as well as the importance of discovery in resolving the issues.

Defendant in this case revealed to the Court in both Hunter and Lemanski the problems encountered with the Plaintiff's changing damage evidence computations as described above.  In the Hunter case, shortly before trial plaintiff's counsel indicated its previous damage calculation was double the

damages actually calculated by its expert and submitted a significantly reduced damage calculation.  It is reasonable that the problems with the Plaintiff's damage calculation prompts the Defendant to seek underlying data in order to ensure the validity and accuracy of the Plaintiff's damage calculations.

With regard to the motion to compel additional detail regarding the production of actual sales data concerning the claimed damages, Judge Whalen, at the conclusion of the May, 2014, hearing on the motion to compel, took the matter under advisement and indicated he would enter a written order (Lemanski d/e 50, pages 38-41).  As of the date of filing of this opinion, the Court is unable to find any written order regarding the motion to compel on the docket in the Lemanski litigation.

In reviewing the orders entered in both the Hunter and Lemanski litigation, it appears that the parties may have reached some agreement on the documents sought under the motion to compel.  With regard to the motion to compel the additional sales information requested by the Plaintiffs in production requests numbered 39-43, which seek per unit sales details, if the parties have reached an agreement which moots the need for a ruling, then the parties should notify the Court of the agreement.  If no agreement has been reached, the Court needs additional information in order to rule on the motion.

In that regard, the parties are ordered to submit to the Court within 14 days of the entry of this order, the following:

From the Plaintiff:

1) The manner in which the detailed records of Orthofix' sales for the products at issue in this litigation, over a five-year period, is kept. For instance, whether the data is in ESI form or in paper form.

2) The nature of the inquiry and labor which would be required for the retrieval of the data.

3) If possible, with underlying detail, the potential cost of recovery of the data stating in detail how the costs are computed.

4) Plaintiff should address whether the information sought is cumulative or duplicative of the information already provided, or could be obtained from some other source that is less burdensome or less expensive.

From the Defendant:

5) State how the data sought would be used in arriving at an alternate damage calculation to be presented at trial. Defendant should address whether the information sought is cumulative or duplicative of the information already provided, or could be obtained from some other source that is less burdensome or less expensive. Defendant

should detail the nature of the specific information provided, or

agreed to be provided, by the Plaintiff and how that information would

need to be supplemented regarding preparation of alternative

damage calculations using actual, rather than average, calculations.

The parties shall have seven (7) days to reply to the submissions of the

adverse party.  These submissions of the parties shall be subject to the page

limitations set forth in Local Rule 7.1(B)(4)(a).

2)    Sales Records for Areas Outside Gordon's Territory

(Defendant requests 45-47)

Gordon requests that the Court order Orthofix to produce documents

showing, on a state-by-state basis, the requested sales detail discussed above.

Request #47 requests that detail on a region-by-region basis.  Gordon argues

that this detail is necessary to enable Gordon to adequately perform damage

analysis.

At the hearing on the motion to compel in the Lemanski litigation held

before Magistrate Judge Whalen on May 8, 2014, counsel for Orthofix indicated

that they had produced revenue information for each of Orthofix' five sales

regions, and that the additional information would be produced and broken out

on a monthly basis.  Orthofix Inc. v. Lemanski, No. 2:13-cv-11421 (E.D. Mich.),

(Lemanski document #50, pages 27-41).   Hence, it appears that, since

preparation of the Defendant's Motion to Compel, Orthofix has changed it's position on the scope of information to be provided.[2]  Subject to the determination as to the type of data which is susceptible for production, as discussed above, it appears that the geographic restrictions on the production of Orthofix' sales information have been resolved based upon the statements made in the argument of the motion to compel in Lemanski, and Defendant's request is moot.

3)    Documents Regarding Production Capacity

       (Defendant request 51)

       Gordon argues that Orthofix must produce discovery regarding the production capacity for the products, presumably bone growth stimulators, in order to show that Orthofix would have been able to have produced the product for which sales losses are claimed.  Without some evidence or factual basis to suggest sales, for which damages are sought, were unable to be made because the product could not be produced, Gordon's request seems to be based upon sheer speculation.  The Court assumes that considerable discovery has taken place and no such evidence has been discovered.  Unless there is some

_____

[2]Defendant's Motion to Compel was filed in this case on May 9, 2014.  The Court assumes that the rulings made on May 8, 2014 had not been considered in the Motion to Compel filed herein as the Court assumes the motion was drafted prior to the results of the hearing on May 8, 2014.

evidentiary basis to suspect that lack of production caused a lack of sales, the burden of the proposed discovery on production outweighs its likely benefit. The Court denies Gordon's motion to compel documents regarding production.

4)      Scope of Production for Historical Sales Information

Gordon requested sales data going back to 2006, arguing that Defendant's employment began on or about September 1, 2007, and Gordon sought sales records in her territory for one year prior to employment for purposes of investigating and challenging Orthofix' contention that Orthofix' non-compete agreement protected its existing relationship with customers in Gordon's territory. Gordon argues that Orthofix must show that it in fact had existing relationships with customers in Gordon's territory. It appears to the Court, however, that information going back to one year prior to Gordon's employment by Orthofix is unnecessary given the terms of the contract. The agreement sought to be enforced defines "covered customers" as persons whom Gordon personally called upon or met with for business purposes on behalf of Orthofix or customers on whose sales Gordon received commissions or other credits during the two years prior to Gordon's separation from employment. Hence, given the two-year period contained in the definition, it would be unnecessary to go back to "look back" until 2006.

In its response to the Motion to Compel, Orthofix represents that it has agreed to produce historical profit and loss information from January 1, 2009 until April 30, 2014. Orthofix Response (d/e 33, page 7). In the argument on the motion to compel in Lemanski, counsel for the plaintiff indicated that the parties had met and conferred and said they want data from January 1, 2009 to the present, which would give them five full years of data. Orthofix Inc. v. Lemanski, No. 2:13-cv-11421 (E.D. Mich.) (Lemanski document #50, page 15).

From the above representations, the Court discerns that, as to the dates for which information will be provided, the parties agree those dates would be January 1, 2009 to the present. Based on the perceived agreement between the parties, the Court denies Defendant's motion to compel historical sales information as moot. If the parties do not agree, they should inform the Court of the outstanding dispute as set forth below.

5)      Orthofix' Objection Based Upon Alleged Competitive Advantage

Gordon notes that in the responses to Requests 39-43, 45-48 and 50 of the Defendant's Request to Produce, Orthofix objects that the requests seek highly sensitive financial information for the purpose of obtaining a competitive advantage. The Court agrees with Gordon that the protective order previously entered in this case prevents disclosure of any such information, assuming the

Plaintiff designates those documents produced as "attorney's eyes only".

Orthofix' objections based upon alleged competitive advantage are denied.

6)     Documents Related to Gordon's Employment Agreement

       (Defendant requests 4, 38)

       The issue regarding documents concerning Gordon's employment

agreement was raised during the hearing on the motion to compel in Lemanski.

In that case, plaintiff's counsel indicated they did not plan to produce any

extrinsic evidence of the interpretation of the contested portions of the

employment agreement at trial.  Counsel also represented that there was no

"master scheme" or policy document at Orthofix which states the reasons why

they draft their non-compete or how they interpret it, other than what his counsel

said.  Orthofix Inc. v. Lemanski, No. 2:13-cv-11421 (E.D. Mich.) (Lemanski

document #50, pages 34-35).

       If no extrinsic evidence is presented regarding the intent of the parties

concerning the agreement, the agreement must be construed by the language

used in the document.  For these reasons, the Court denies Defendant's motion

to compel regarding document production requests 4 and 38.

       Additionally, Orthofix has represented in its response filed in this case that

a reasonable search has been done in an effort to comply with discovery and

Orthofix has found that no such documents exist.

7)      Orthofix' Unreasonable Limits on Time Frame

(Defendant request 6)

This objection relates specifically to the time frame for the request to produce documents for and related to trade secrets or confidential information. The request to compel, as written, does not refer to a failure to produce the documents, but relates only to the time frame.  The Court notes that the joint list of unresolved issues filed in the Lemanski litigation, <u>Orthofix Inc. v. Lemanski</u>, No. 2:13-cv-11421 (E.D. Mich.) (Lemanski document #45), filed on May 6, 2014, does not list the production of documents relating to trade secrets or confidential information as an unresolved issue between the parties.  Consequently, the Court infers that the parties have resolved the underlying dispute as to the production of documents relating to trade secrets or confidential information, and have at issue only the time frame.  The Court orders that documents regarding trade secrets or confidential information be produced for the time frame agreed to by the parties as discussed in Section A.(2), Sales Records for Areas Outside Gordon's Territory, set forth above.  As noted in Section A.(2) above, it appears that the parties agreed that data would be produced from January 1, 2009 to the present.  The same time frame would be applicable to the documents sought in Defendant's request for production #6.

8) Orthofix' Failure to Provide a Privilege Log

Orthofix is ordered to provide a privilege log for any documents withheld on the basis of attorney/client privilege.

9) Refusal to Provide Periods of Time that Gordon's Former Customers Purchased Bone Growth Stimulators

(Interrogatory #2)

Orthofix' answer to interrogatory #2 is not responsive, as it appears the information sought is not equally accessible to the Defendant as the sales information would be in the possession of Orthofix. Attachment A attached to the interrogatory answer is not sufficient to provide the information requested. Orthofix is ordered to provide a responsive answer to interrogatory #2.

10) Failure to Adequately Identify Trade Secrets and Confidential Information with Specificity (Interrogatories #3 and #4) and Failure to Respond in Detail for Confidential Information   (Interrogatories #6 and #11)

The term "confidential information" is defined in the employment agreement signed by Gordon and includes many items such as customer lists for identification, trade secrets, as well as a litany of other descriptive terms. The existence of a "trade secret" is ordinarily a question of fact. The Seventh Circuit has noted that the question of whether certain information constitutes a trade secret ordinarily is best "resolved by a fact finder after presentation of evidence

from each side".  <u>Learning Curve Toys, Inc. v. Playwood Toys, Inc.</u>, 343 F.3d 714, 723 (7th Cir. 2003).

The categories of information that Orthofix claims to be "confidential information", includes trade secrets.  The types of items characterized as confidential information are stated on the face of the contract.  It is not the burden of Plaintiff to prove there was "confidential information" to which Gordon may have had access if it is not alleged to have been used in violation of the contract.  Plaintiff must only specify the "confidential information" used, or thought to be used, in violation of the contract.

Further, Orthofix has indicated, in its response, that it is amending its responses to interrogatories 6-11 to enumerate a response for each category of information it identifies.

11)  Failure to Schedule Depositions

In its response Orthofix indicated that it has agreed to provide deposition dates for the requested depositions.  Orthofix also represents that they are endeavoring to schedule the remaining depositions.  The Court assumes that the required depositions have been scheduled.

B. Defendant's Motion to Compel Production (d/e 34)

The Defendant's Motion to Compel Production of Documents in Response to Second Request has attached as Exhibit A two additional requests made by the Defendant in paragraphs 65 and 66 of its Second Request.

12)    Defendant Request 65

Request 65 seeks sales documents to show detail, in units, of bone growth stimulator purchased / located in the geographic region in which Gordon worked while employed by the Plaintiff.  The considerations regarding this request are similar to those discussed in paragraph A.(1) above, Requests for Per Unit Detail of Sales by Customer, and A.(4), Scope of Production for Historical Sales Information, above.  Paragraph A.(1) dealt with the specificity of the documents, while paragraph A.(4) dealt with the time frame.  As with the detailed sales records discussed in paragraph A.(2) above, if the parties have reached an agreement which moots the need for ruling regarding document production sought in paragraph 65 of the Second Request for production of documents, the parties should notify the Court of the agreement.  If no agreement, has been reached, the Court needs the additional information to rule on the motion as set forth in the discussion in paragraph A.(2) above.

13) Defendant Request 66

Request 66 seeks sales documents for Orthofix' Territory Managers, Associate Territory Managers, and Sales Representatives, who sold Orthorfix' bone growth stimulators and resigned or were terminated between January 1, 2011 and December 31, 2013, and did not begin selling Orthorfix' bone growth stimulators to the same or similar customer base. The request seeks documents which show sales volume in units of bone growth stimulators purchased by customers of the former employee during the twelve-month period before the former employee's separation and the twelve-month period after the former employee's separation.  This information appears to be sought to provide factual basis for Defendant's defense that a decrease in sales may be explained by the loss of an experienced sales representative in a sales area and the replacement of that salesperson by a less experienced salesperson.  As noted above, discovery is permitted on defenses which show an alternative to the evidence presented by the opposing party.  In this case, Defendant seeks the information in order to challenge the Plaintiff's evidence of lost sales by showing that the sales may have been caused by replacement of an experienced salesperson with an inexperienced salesperson instead of competition of the Defendant allegedly in violation of the contract.  Plaintiff is ordered to produce the information sought in Request 66.

## Unresolved Issues

If the issues discussed above are unresolved, the parties are ordered to submit the information listed at the conclusion of paragraph A.(1) above. If other discovery issues remain unresolved, the parties are ordered to submit a joint list of unresolved issues listing the issue unresolved and the position of the Plaintiff and of the Defendant as to each issue. Such a list of unresolved issues should be submitted within fourteen days of the entry of this Order and Opinion.

## Conclusion

Defendant's Motion to Compel Discovery Cooperation and Memorandum in Support (d/e 28) and Defendant's Motion to Compel Production of Documents in Response to Second Request and Memorandum in Support (d/e 34) are ALLOWED in part and DENIED in part as set forth above. Defendant's request for expenses and attorney's fees is DENIED. The Court defers further ruling based upon submissions of unresolved issues as set forth above.

ENTERED this 15th day of October, 2014

_____*s/ Tom Schanzle-Has*kins_____
TOM SCHANZLE-HASKINS
UNITED STATES MAGISTRATE JUDGE